AUSA: Kathryn Wheelock

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>UNITED STATES OF AMERICA<br><br>v.<br><br>MANUEL ESTEBAN MIJANGO and<br>TARRY TAE SUP SHIN,<br><br>Defendants. | 24 mj 3506<br>**COMPLAINT**<br><br>Violation of 21 U.S.C. § 846<br><br>COUNTY OF OFFENSE:<br>WESTCHESTER |

SOUTHERN DISTRICT OF NEW YORK, ss.:

Johanna Santos, being duly sworn, deposes and says that she is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**
**(Conspiracy to Distribute and Possess with Intent to Distribute Narcotics)**

1.  From at least on or about September 16, 2024 through at least on or about October 2, 2024 in the Southern District of New York and elsewhere, MANUEL ESTEBAN MIJANGO and TARRY TAE SUP SHIN, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to violate the controlled-substance laws of the United States.

2.  It was a part and object of the conspiracy that MANUEL ESTEBAN MIJANGO and TARRY TAE SUP SHIN, the defendants, and others known and unknown, would and did intentionally and knowingly distribute and possess with intent to distribute a controlled substance, to wit, five kilograms and more of a quantity of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Task Force Officer with the DEA. I have been personally involved in the investigation of this matter. I have been a Task Force Officer with the DEA for approximately 12 years. I am also a detective with the Mount Vernon Police Department. During my time in law enforcement, I have investigated numerous narcotics cases. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my conversations with law enforcement and my review of recordings and other records, I am aware of the following:

    a. On or about September 19, 2024, a narcotics distributor in Colombia introduced a confidential source (the "CS")[1] and MANUEL ESTEBAN MIJANGO, the defendant, during a phone call. On that call, MIJANGO asked if he could purchase 100 kilograms of cocaine from the CS in Philadelphia. The CS responded that he could sell MIJANGO cocaine in New York, not Philadelphia, and the CS and MIJANGO agreed to meet in person in Puerto Rico later to continue their discussion.

    b. On or about September 26, 2024, MIJANGO met with the CS in San Juan, Puerto Rico. At this meeting, the CS told MIJANGO that the price was $10,500 per kilogram and that the sale would take place in New York. MIJANGO stated that was a good price, and that an

---

[1] The CS has prior convictions for narcotics distribution and is working with the DEA in New York in connection with this investigation in exchange for compensation.

Asian individual living in Pennsylvania (who law enforcement later learned was TARRY TAE SUP SHIN, the defendant) would be the one to provide the money for the cocaine.

      c.      During the September 26 meeting, MIJANGO FaceTimed SHIN in front of the CS. During that FaceTime video call, MIJANGO, SHIN, and the CS agreed that MIJANGO and SHIN would drive from Pennsylvania to New York City to purchase 50 kilograms of cocaine from the CS. They did not agree specifically where to meet in New York City.

      d.      At approximately 6:30 a.m. on October 2, 2024, the CS and MIJANGO spoke on the phone. MIJANGO explained that rather than purchase all 50 kilograms of cocaine at once, he and SHIN would take two trips to New York. MIJANGO and the CS agreed that on the first trip, MIJANGO would purchase 25 kilograms of cocaine.

      5.      Based on my conversations with law enforcement and my review of videos taken by the CS and surveillance photographs, I am aware of the following:

      a.      On October 2, 2024 at approximately 8:15 a.m., MANUEL ESTEBAN MIJANGO, the defendant, called the CS to report that he was on the way to "the Towers." MIJANGO also sent the CS a video of him riding in the passenger seat of a white vehicle. I know, based on training and experience, that "the Towers" is a phrase used to refer to New York City.

      b.      At approximately 10:40 a.m. that morning, MIJANGO and the CS communicated over the phone regarding where specifically they would meet for the sale. MIJANGO sent the CS his real-time location, which was in the vicinity of a mall in Yonkers.

      c.      At approximately 10:55 a.m., MIJANGO sent the CS the address of the same mall in Yonkers.

      d.      Law enforcement conducted surveillance in the vicinity of the mall and at approximately 11:10 a.m., law enforcement spotted a white Jeep with Pennsylvania license plates driving around in the parking lot outside of a coffee shop next door to the mall. Law enforcement

3

conducting surveillance observed a man (who law enforcement later identified as TARRY TAE SUP SHIN, the defendant) driving the Jeep, with another individual (not MIJANGO) in the passenger seat.

  e. At approximately 11:19 a.m., the CS communicated with MIJANGO on FaceTime. MIJANGO showed the CS stacks of cash inside of a bag and the CS showed MIJANGO the top of a suitcase, indicating that the cocaine was inside.

  f. Law enforcement then observed SHIN park the Jeep in the parking lot outside of the coffee shop. SHIN then walked into the mall with the other individual.

  g. A few minutes later, law enforcement observed MIJANGO walk towards the Jeep. At the same time, SHIN had exited the mall and walked toward the vicinity of the Jeep. SHIN and MIJANGO were then arrested.

6. I know, based on a *Mirandized* interview with MANUEL ESTEBAN MIJANGO, the defendant, following his arrest, that:

  a. MIJANGO and TARRY TAE SUP SHIN, the defendant, initially met in or about March 2024 and have worked together since then buying and selling narcotics.

  b. In the early morning of October 2, 2024, MIJANGO flew from California to Philadelphia. TARRY TAE SUP SHIN, the defendant, picked MIJANGO up at the airport in a white Jeep and drove MIJANGO to an apartment building in Philadelphia. MIJANGO waited outside of the building while SHIN went inside the apartment building for approximately ten to fifteen minutes. SHIN returned to the Jeep with a backpack full of cash.

  c. Then, beginning at approximately 7:30 a.m., SHIN drove MIJANGO from Philadelphia to Yonkers, New York in the Jeep.

  d. Before arriving at the coffee shop in Yonkers, SHIN and MIJANGO had divided the cash to be used to purchase the cocaine into two separate backpacks, which were both

4

inside the Jeep.

   e. SHIN, MIJANGO, and the individual who was observed riding in SHIN's Jeep met inside the coffee shop. MIJANGO was told to stay inside the coffee shop, at which point SHIN and the other individual got inside SHIN's Jeep and drove around the parking lot.

   7. Based on my review of a photograph of the individual who MANUEL ESTEBAN MIJANGO, the defendant, FaceTimed on September 26, 2024 and my participation in the investigation (including my presence at the arrest of TARRY TAE SUP SHIN, the defendant, on October 2, 2024), I am aware that SHIN is the individual who MIJANGO FaceTimed during the September 26 meeting with the CS.

   8. Based on my involvement in the investigation, I am aware that approximately $312,000 was recovered from two backpacks located in the Jeep.

   WHEREFORE, I respectfully request that MANUEL ESTEBAN MIJANGO and TARRY TAE SUP SHIN, the defendants, be imprisoned or bailed, as the case may be.

_____
JOHANNA SANTOS
Task Force Officer
Drug Enforcement Administration

Sworn to before me
this 3rd day of October, 2024.

_____
THE HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK